M. J. DALY AND SONS, INCORPORATED, *vs.* THE NEW HAVEN HOTEL COMPANY ET AL.

Third Judicial District, New Haven, June Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and TUTTLE, Js.

Substantial performance of a building contract with no wilful default upon the part of the contractor, entitles him to recover the unpaid portion of the contract price, less such sum as ought to be deducted therefrom for making good his unintentional omissions or variations. This rule is peculiar to this class of contracts, and its recognition and approval by the courts is due to the fact that in this way only can justice and equity be practically accomplished.

In determining the amount of the deduction which ought to be made in specific cases, regard must be had to the circumstances which each presents. If the short-comings are such as can be remedied without substantial interference with the structure of the building, and for a comparatively small sum, as in the present case, the approved method is to deduct from the contract price such sum as it would cost to make the work comply with the contract. If, however, the completion of the building pursuant to the contract would involve material structural changes, the amount of the deduction may be measured by the diminished value of the building to the owner because of such defects. But in any case, the deduction is to be so determined that the resultant payment will be fair and reasonable

Daly & Sons *v.* New Haven Hotel Co.

compensation, with reference to the contract price, for what of value the owner has received, and no more, and the contractor, at the same time, will receive a fair reward, determined by the contract standard, for the benefit conferred by him in his attempt to execute the contract.

Having substantially performed his contract, the builder cannot be deprived of his right to recover with reference to the contract price, by being wrongfully prevented by the owner from fully completing the work.

The cases of *Valente* v. *Weinberg*, 80 Conn. 134, and *Hoyt* v. *Pomeroy*, 87 Conn. 41, explained and distinguished.

The question of substantial performance is ordinarily one of fact.

The fact that a builder did not continue in his efforts to complete his work after he had been wrongfully discharged by the owner acting under a certificate given in bad faith by the architects, does not convert his failure in this respect into a wilful or voluntary default.

As respects the builder's attitude toward his work and its completion, it would be immaterial whether or not the architects acted in bad faith in giving the certificate; but if given in bad faith, as found in the present case, the certificate loses its efficiency for all purposes connected with the cause.

The trial court found that the contract, in the present case, could have been fully completed by an expenditure of $500. *Held* that the court inadvertently mistook the character and scope of the testimony upon which this conclusion was based, and therein erred.

The defendant owner expended $8,784 in installing a new system of ventilation for a portion of the building, in place of that originally designed, claiming that this method of correcting the plaintiff's defective work was more economical than the direct process of correction would have been. The trial court found that this was not so and that the architects knew that it was not so. *Held* that the conclusion of knowledge upon the part of the architects was, upon the facts as found, a reasonable and legitimate one.

The architects' certificate was pleaded as conclusively binding the plaintiff to the payment of the amount therein certified. *Held* that the finding of bad faith simply avoided that effect, and left the matter of amount open for determination upon the evidence.

An owner cannot discharge the builder, under the provisions of § 5 of the contract in general use by the American Institute of Architects, and complete the building himself, and at the same time enforce the penalty for liquidated damages; resort to the former remedy precludes a resort to the latter.

Whether a party waived certain provisions of a building contract is a question of fact.

Argued June 15th, 1916—decided January 25th, 1917.

Daly & Sons *v.* New Haven Hotel Co.

Suit to foreclose a builder's lien upon real estate, brought to and tried by the Superior Court in New Haven County, *Reed, J.;* facts found, including an indebtedness of $20,384, and judgment rendered for the plaintiff, and appeal by the defendant Hotel Company. *Error and new trial ordered.*

On May 20th, 1911, the plaintiff entered into a written contract with the defendant Hotel Company whereby it agreed to install in the Hotel Taft, then in process of erection, its high-pressure steam connections, and its low-pressure and hot-blast heating and mechanical ventilation system, for $70,500. In so far as the high-pressure steam heating system was concerned the plaintiff completed its contract, and no question is presented relating thereto. It sublet to Rourke Brothers and Company the metal duct work in the hot-blast heating and ventilating system for $11,696.

The form of contract executed by the plaintiff and the Hotel Company was that in general use by the American Institute of Architects. By Article VI the work contracted for was to be completed by November 1st, 1911, and liquidated damages at the rate of $75 a day were provided for subsequent delay. Article V is printed in the foot-note.

"Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects, the owner shall be at liberty after three days written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work, and to enter upon the premises and take possession for the purpose of completing the work included under this

On or about May 1st, 1912, the architects decided to install new duct work and make certain changes in the hot-blast heating and ventilating system as originally designed, and made detailed plans and drawings therefor. At this time the plaintiff had substantially completed all the work under its contract, and only a few minor details of it remained uncompleted. All the heating and ventilating ducts were installed and in operation, but certain parts of the hotel were not properly ventilated.

On May 11th, 1912, the plaintiff, through the Rourkes, continued to be engaged in the completion of the work and in remedying such defects therein as then existed. The uncompleted work necessary to a full compliance with the contract could have been done at an expense of not more than $500. On that day the architects gave to the Hotel Company a certificate of default, pursuant to Article V, upon which the plaintiff's employment was terminated.

At no time prior to May 11th, 1912, had the plaintiff failed in the performance of any of the agreements contained in its contract except as to the time of completion of the work, and this the defendant had waived. The plaintiff was engaged in the work of completing its contract when, on May 11th, 1912, the architects gave

contract, of all materials, tools and appliances thereon, and to employ any other persons to finish the work, and to provide the material therefor; and in case of such discontinuance of the employment of the contractor, it shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties."

the defendant the certificate of default, and at this time the architects were deciding upon and preparing plans for a changed system. The architects knew, when they decided upon these changes and issued the certificate of default, that the plaintiff had substantially completed its contract, and that a small expenditure of money would suffice to correct the defects and supply the omissions in the work as required by the contract.

Subsequently the architects authorized and approved an expenditure of $8,687.16 by the defendant in constructing the new work and the changes decided upon, and in replacing the old. The defendant was advised by the architects that these changes were cheaper than the reconstruction of the ducts according to the original plans, but this was not correct. Nearly all of this expenditure by the defendant was not required for the completion of the plaintiff's contract, but was occasioned by the new and changed system adopted in substitution for that called for in the contract.

Between August 12th, 1911, and February 12th, 1912, the defendant paid the plaintiff, in eight payments, the sum of $57,310. Of this sum $9,800 was paid on account of the Rourke Brothers and Company's contract.

The architects did not act in good faith, either in giving their certificate of default upon which the plaintiff's employment was terminated, or in finding and certifying that the expenditure of $8,687.16 was properly chargeable against the plaintiff.

The plaintiff performed extra work to the value of $4,957.14, as determined by arbitration under the terms of the contract. As to the propriety of the allowance of this item to the plaintiff no question is made.

The unpaid balance of the contract price is $13,616.58.

*Leonard M. Daggett* and *Samuel H. Fisher*, for the appellant (defendant Hotel Company).

*Terrence F. Carmody* and *Walter E. Monagan*, for the appellee (plaintiff).

PRENTICE, C. J.   The complaint in this case seeks a foreclosure of a mechanic's lien filed by the plaintiff against real estate of the defendant Hotel Company, hereinafter, for convenience sake, referred to as the defendant, to secure the sum of $18,573.72 claimed to be due the plaintiff for labor performed and materials furnished in the construction of a building thereon, under and by virtue of a contract with the owner. No objection was made below, or is made here, to the validity of the lien or the right of the plaintiff to have a foreclosure judgment, except such as is addressed to the existence of an indebtedness for the labor performed and materials furnished upon the building.   The plaintiff alleges that the sum named is due: the defendant that nothing is due.   If anything is shown by the evidence to be due, the lien is good for that amount and may be foreclosed for that amount.   *Nichols* v. *Culver,* 51 Conn. 178, 180; *Marston* v. *Kenyon,* 44 Conn. 349, 356. The fundamental question of the case, therefore, relates to the existence of such indebtedness and its amount. Its answer is to be determined by recourse to the ordinary rules of law.

As to the $4,957.14, alleged by the plaintiff to be due under an award of arbitrators made in conformity with a provision of the contract, no objection is made to the plaintiff's right to charge that sum against the defendant.   Its right to charge any portion of the balance of the claimed indebtedness is stoutly denied, and many of the alleged errors of the trial court gather around its conclusion that the sum of $12,690 was properly charge-

able as a balance due for labor and materials performed and furnished in the execution of the contract.

The trial court found that the plaintiff substantially performed its contract, that its defaults were not wilful, and that an expenditure of $500 would have accomplished full performance. It accordingly held that there was due to the plaintiff, secured by the lien, the unpaid balance of the contract price less $500, to wit, $12,690, and rendered its judgment of foreclosure for that sum. Assuming the facts to be as found, the court's action was that which, the counterclaim aside, the law sanctions. *Pinches* v. *Swedish Evangelical Lutheran Church,* 55 Conn. 183, 187, 10 Atl. 264; *Jones* v. *Marlborough,* 70 Conn. 583, 589, 40 Atl. 460; *Jones & Hotchkiss Co.* v. *Davenport,* 74 Conn. 418, 420, 50 Atl. 1028; *Morehouse* v. *Bradley,* 80 Conn. 611, 613, 69 Atl. 937; *O'Loughlin* v. *Poli,* 82 Conn. 427, 429, 74 Atl. 763.

The allegations of the complaint do not place limitations upon the plaintiff's right to a foreclosure of its lien for whatever sum is rightfully due to it on account of the construction of the building. They are sufficient to support a judgment of foreclosure upon whatever theory or basis the amount of that indebtedness is to be arrived at, whether it be that the plaintiff performed its contract, or substantially performed it, or was wrongfully prevented by the defendant from performing it.

Doubtless counsel for the defendant are right in saying that the complaint gives evidence that the plaintiff was not looking to a recovery upon the basis of performance, since the averment that the work was done under a contract providing for payment after completion, is unaccompanied by one of completion. But it does not follow from that fact that the amount for which foreclosure may be had is to be determined upon direct proof of the reasonable worth of the labor

performed and materials furnished, and not with reference to the contract price presumably embodying an element of profit. On the contrary, the well-established rule, in this and other jurisdictions, is that the reasonable value for which recovery may be had in cases of substantial performance of building contracts, is to be ascertained with reference to the contract price and by deducting from that price such sum as ought to be allowed for the omissions and variations. *Pinches* v. *Swedish Evangelical Lutheran Church*, 55 Conn. 183, 187, 10 Atl. 264; *Jones & Hotchkiss Co.* v. *Davenport*, 74 Conn. 418, 420, 50 Atl. 1028; *Valente* v. *Weinberg*, 80 Conn. 134, 138, 67 Atl. 369; *Morehouse* v. *Bradley*, 80 Conn. 611, 614, 69 Atl. 937; *O'Loughlin* v. *Poli*, 82 Conn. 427, 429, 74 Atl. 763; *Bowen* v. *Kimball*, 203 Mass. 364, 369, 89 N. E. 542; *Danforth* v. *Freeman*, 69 N. H. 466, 469, 43 Atl. 621; *Phillip* v. *Gallant*, 62 N. Y. 256, 265; 24 L. R. A. (N. S.) 351 note; 6 R. C. L. p. 967, § 343.

If it were so that the complaint contained averments which, either expressly or by reasonable implication, alleged completion, the plaintiff would not for that reason be deprived of the right to have a judgment of foreclosure for an amount ascertained upon the basis of substantial performance. *Healy* v. *Fallon*, 69 Conn. 228, 234, 37 Atl. 495.

The rule stated as applicable to building contracts is an exception to that governing contracts generally. It had its origin in considerations of equity and justice, and its recognition is due to the fact that substantial justice in such cases can be done in no other way. There is no reason why one who has substantially performed such a contract, but unintentionally failed of strict performance in the matter of minor details, should have imposed upon him as a condition of recovery for that of which the other party has received

the benefit, the burden of showing by direct evidence its reasonable value, or why he should be deprived of all benefit of the contract which he has substantially .performed. The doctrine of substantial performance has had the approval of the courts for the very purpose of avoiding the hardships arising from the operation of the general rule, and the principles governing its application were designed to work to the fullest attainable extent approximate justice to all concerned.

In the determination of the amount of deduction which ought to be made in the application to specific cases of the rule stated, regard must be had to the circumstances which each presents. A different method, for instance, is required to accomplish the ends of justice where the shortcomings are such as may be remedied and completion according to the contract had without substantial interference with the structure of the building, than where the remedy and completion involves substantial structural changes. In the first case—and that, upon the finding, is this case—the approved method under ordinary conditions is to deduct from the contract price such sum as it would cost to make the work comply with the contract. In the latter case, the amount of deduction might be measured by the diminished value of the building to the owner by reason of the defects. In any case, the deduction is to be so determined that the owner's resultant payment will be fair and reasonable compensation with reference to the contract price for what of value to him he has received and no more, and that the contractor shall receive a fair reward determined by the contract standard for the benefit conferred by him in his attempt to execute the contract. *Pinches* v. *Swedish Evangelical Lutheran Church*, 55 Conn. 183, 187, 10 Atl. 264; *Sherry* v. *Madler*, 123 Wis. 621, 626, 101 N. W. 1095; *Gleason* v. *Smith*, 63 Mass. (9 Cush.) 484, 486;

*Sticker* v. *Overpeck,* 127 Pa. St. 446, 450, 17 Atl. 1100; *Holl* v. *Long,* 34 Misc. Rep. (N. Y.) 1, 3, 68 N. Y. Supp. 522; 24 L. R. A. (N. S.) 351 note; 134 Amer. State Rep. 684 note.

The fact that the plaintiff was wrongfully prevented by the defendant from continuing with the work does not stand in the way of the defendant's indebtedness to it being determined on the basis of substantial performance. By such performance it won the right to recover with reference to the contract price, and it was not in the defendant's power to deprive it of the benefits of such recovery by a wrongful act. It well may be that in such case the contractor would have the right to treat the contract as rescinded, and avail himself of redress against the wrongdoer by the recovery of damages measured as outlined and applied in *Valente* v. *Weinberg,* 80 Conn. 134, 138, 67 Atl. 369. But to hold that by reason of an act of wrongdoing on the part of the owner a contractor loses the right which was his by virtue of his substantial performance, is quite another matter. It would be a strange doctrine indeed which should give to the wrongful act such effect, and *Valente* v. *Weinberg* furnishes no support for it. In that case the court was not dealing with a situation in which there had been a substantial performance. The plaintiff, indeed, claimed that he had nearly completed the building, but near completion is by no means the same thing as substantial completion according to contract, as that phrase is used in the law. The case was discussed throughout as one where the plaintiff had chosen to treat the contract as rescinded by reason of the defendant's wrongful prevention of performance, and the rule for the measure of damages was prescribed with that fact solely in view. No reference was anywhere made to the presence of the element of substantial performance, or to the rights of the plaintiff, had it been

present. The case of *Hoyt* v. *Pomeroy*, 87 Conn. 41, 86 Atl. 755, was one brought by a contractor who treated the contract, not substantially performed, as rescinded by the wrongful act of the owner and sued to recover the reasonable worth of the labor and materials he had put into the building. The opinion, citing *Valente* v. *Weinberg*, 80 Conn. 134, 67 Atl. 369, rightly says that the measure of damages in such case is not the contract price less the cost of completing the contract, but the reasonable value of the services and materials furnished. p. 46. A broader proposition it neither lays down nor implies.

It remains to consider whether or not the court was justified in reaching the conclusions of fact stated, upon the strength of which it acted and, as we have seen, properly acted. The defendant contends that it erred in respect to the first of them, to wit, that the contract was substantially performed. The question of substantial performance is ordinarily one of fact, and this case furnishes no exception by reason of the subordinate facts found being inconsistent with the ultimate conclusion. *Morehouse* v. *Bradley*, 80 Conn. 611, 613, 69 Atl. 637. Our examination of the conflicting evidence satisfies us that the conclusion is one which we cannot disturb.

It is one of the conditions of a contractor's right to recover as for substantial performance, that his default was not wilful or voluntary. The fact that the plaintiff did not continue in its efforts to complete performance until its accomplishment, did not convert its default in that respect into a wilful or voluntary one. It was deprived of the opportunity to do what it was proposing to do and engaged in doing by way of completion of details and correction of faults, by the act of the defendant who, acting upon the authority of a certificate of default given by the architects and proceeding as provided

in Article V of the contract, terminated its employment. Had this action on the part of the architects and owner been justified by the plaintiff's conduct in respect to the execution of its contract, a very different situation would be presented. But the court has found that there was no such justification for the termination of the plaintiff's employment. As bearing upon the question of the plaintiff's attitude toward the work and its completion, it would appear that it was quite immaterial whether or not the architects acted in bad faith in giving the certificate upon the strength of which the plaintiff's employment was terminated. But the court has found, as it was competent for it to do, that their action was not in good faith, and that puts an end to its efficiency for all purposes connected with the case.

The court's finding that the additional expenditure of $500 would have sufficed to fully complete the contract is one which presents a more troublesome question. It appears from the memorandum of decision that in arriving at the figures named as the reasonable cost of completion, the court in effect adopted the estimate made by one Kimball, an expert witness called by the plaintiff. This it was permissible for it to do, provided Kimball's estimate covered as wide a field of deficiency as did the finding of the court. Our study of this witness' testimony satisfies us that such was not the case. The questions propounded to him, in response to which the $500 estimate was given, contained obvious limitations, and limitations which, as appears from the character of the testimony offered on behalf of the defendant, were important. The witness was asked for his estimate of the reasonable expense "of making such changes and corrections in the duct work as were accessible as indicated in the report of Matlock." Waiving the irregularity of basing the inquiry upon the

contents of a report not in evidence, as the report of Matlock was not, the question propounded to the witness contained two important limitations, in that it confined the estimate called for to changes and corrections, and to changes and corrections in. accessible construction. It did not include omissions, of which there were apparently some at least, and took into account no construction which was inaccessible, as some of the plaintiff's installation complained of was. The estimate given appears to have conformed to the question, and we fail to find any testimony extending its scope. Apparently the court inadvertently mistook the character of this testimony, and assumed that it was more comprehensive than we find it to have been.

The defendant's counterclaim, which the court disallowed, contains two entirely independent claims: (1) for the sum of $8,784.95, an amount audited and certified by the architects as the expense incurred by the defendant in the completion of the plaintiff's contract, as provided in Article V; and (2) for the sum of $15,075 as liquidated damages for failure to complete the work by the time agreed, computed at the rate of $75 per day as provided in Article VI. The total of both was claimed.

A large part of the $8,784.95 item was expended in the installation of a newly designed system for the ventilation of a portion of the hotel, to take the place of that originally designed and substantially constructed by the defendant. The court finds that most of it was so expended. The reason assigned for this substitution was that such method of correction of the plaintiff's defective work was more economical than the direct process of correction would have been. The court has found that this was not so. It has further found that the architects knew that it was not so, that their audit and certificate, pursuant to Article V, was not in good faith,

and therefore that the sum so certified is not conclusive evidence of the plaintiff's obligation to pay that amount. The defendant has asked a correction of the finding by the elimination of its statement as to the architects' knowledge. Given the facts as to the substantial completion of the work as the court has found them and as they must stand, it would be difficult to escape the conclusion of knowledge on the part of the architects which the court drew. It certainly was a reasonable and legitimate one. From it the ultimate conclusion, that the plaintiff was not chargeable with the certified amount, follows naturally and as a matter of course.

It is said that the certificate of the architects should not have been rejected *in toto*, even upon the assumption that there was bad faith in the inclusion in it of improper items. It is to be remembered that the certificate is pleaded as under the contract conclusively binding the plaintiff to the payment of the amount certified. The bad faith found simply avoids that effect, and takes away from the certified amount the element of adjudication. The parties are not thereby deprived of their rights or relieved of their obligations as they may be disclosed by the evidence. Those rights and obligations came under consideration in the determination of the amount that the plaintiff is entitled to receive for the work done and in view of that undone.

In this connection notice should be taken of a claim of counsel for the defendant which appears at this and several other points in their argument, including the discussion of objections to the admission of testimony. They contend that the defendant is entitled to repayment for the expense in fact incurred by it in correcting the faults existing in the work and accomplishing completion. That would be true if the termination of the plaintiff's employment had been rightful, and the required certificate had been given. The contract so

provides. But here the termination was wrongful. The provisions of Article V, therefore, are not applicable to this situation and the defendant's remedy for non-performance is that provided by the ordinary rules of law, to wit, a deduction or allowance, from the contract price for the finished work, of such sum as represents a fair and reasonable cost of repair and completion.

Turning now to the second matter embraced in the counterclaim, it is to be observed that the defendant would not be permitted, in any event, to have redress for delay in completion, by the enforcement of the contract provision for liquidated damages, and at the same time to avail itself of the provisions of Article V. Resort to the latter precludes resort to the former. *New Haven v. National Steam Economizer Co.*, 79 Conn. 482, 492, 65 Atl. 959. The defendant, however, does not, in the present state of the case, encounter that obstacle to the presentation of its claim for liquidated damages. The plaintiff, in its reply to this counterclaim, alleged a waiver of the pertinent contract provisions, and the court has found such waiver. This is a finding of fact and one which, in view of the evidence, we may not disturb. *Chatfield Co. v. O'Neill*, 89 Conn. 172, 175, 93 Atl. 133.

Other assignments of error of minor importance do not, in view of our conclusion, call for consideration.

There is error and a new trial is ordered.

In this opinion THAYER and RORABACK, Js., concurred.

WHEELER, J. (concurring). I concur in the result and with the reasoning of the opinion, except in the particulars herein discussed. The complaint alleges that the plaintiff furnished materials and rendered services in the construction of defendant's building

under an agreement, made a part of the complaint, which were reasonably worth $18,573.72, and $13,616.58 represents a balance due on the contract as provided therein.

The complaint does not allege in terms that the plaintiff completed the contract. Other allegations necessary under the statute in a case praying for the foreclosure of a mechanic's lien are found in the complaint. The opinion holds that the allegations of this complaint are sufficient to support a judgment of foreclosure "whether it be that the plaintiff performed its contract, or substantially performed it, or was wrongfully prevented by the defendant from performing it."

*Healy* v. *Fallon*, 69 Conn. 228, 234, 37 Atl. 495, is cited as authority for holding that a complaint alleging a completed contract would support a judgment of foreclosure upon the basis of a substantial performance. We do not understand the case to hold further than this: "The defendants . . . asked the court, in effect, by their pleadings, to try the question whether the plaintiff had performed his contract, and if not, whether anything, and if so what amount, was due to him." And hence the court permitted a recovery upon proof of a substantial performance. We know of no decision in our State upon this point. We find decisions elsewhere which require specific allegations of substantial performance. We do not see how a defendant will be prejudiced by the adoption of the rule of pleading stated herein. When we go further, and hold that under allegations of a completed, or a substantially completed, contract, the plaintiff may recover for a partial completion upon proof that the owner prevented him from completing his contract, we inject into the case an element of which the complaint gave the defendant no notice. Such a rule of pleading may

result in serious prejudice to a contractee. It is contrary to the spirit of our Practice Act and the authorities appear to forbid it. Estes on Pleading, § 323; *Wolfe* v. *Howes*, 20 N. Y. 197; *Lawson* v. *Hogan*, 93 N. Y. 39; *Robinson* v. *Chinese Charitable & Benevolent Asso.*, 47 N. Y. App. Div. 69, 70, 62 N. Y. Supp. 292. Hare and Wallace, in their note to *Cutter* v. *Powell*, 2 Smith's Leading Cases, p. 53, say: "In cases of prevention by the party, or of tender and refusal, the plaintiff has a right of action on the special contract, prevention or refusal being equivalent for that purpose to performance; . . . but in this case he *must* declare *specially*, and set forth the readiness, or tender and refusal, or prevention." Cases cited. See also 27 Cyc. 380.

While the complaint does not in terms allege the completion of the contract, it does allege that the plaintiff commenced and finished furnishing materials and rendering services according to the tenor of the contract, and that the architects wrongfully refused to give the certificate of completion. We think the pleader intended to allege a completed contract. This is now of no importance, since the plaintiff now claims, and the defendant apparently acquiesces, that the complaint may be construed as setting up a claim arising out of the contract and one based upon the reasonable value thereof by virtue of a substantial performance of the contract.

The trial court has found a substantial performance, a conclusion which, upon the subordinate facts found, seems to be considerably in advance of any heretofore reached in our decided cases. In an ordinary case of substantial performance the rule of *Pinches* v. *Swedish Evangelical Lutheran Church*, 55 Conn. 183, 187, 10 Atl. 264, governs, that "services rendered and materials furnished under a special contract, but not in entire conformity with it, provided the deviation from the

contract was not wilful, and the other party has availed himself of, and been benefited by, such labor and materials," may be recovered for to the extent of the benefit conferred, having reference to the contract price for the entire work. "In cases where only some additions to the work are required to finish it according to the contract, or where, as in the case of *Blakeslee* v. *Holt* (42 Conn. 226), defects in it may be remedied at a reasonable expense," the recovery will be the difference between the balance due under the contract and what it would cost to complete the contract. The trial court and the majority opinion place this case within the class last referred to. The plaintiff did not offer to prove the reasonable value of the work done and materials furnished. The court determined the amount of its judgment by deducting the sum for which the defects and omissions could have been done, from the balance due on the contract, thus adopting the rule of *Pinches* v. *Swedish Evangelical Lutheran Church.* This rule is an exception to the general rule. The majority opinion sustains this ruling. We do not controvert either the authority or the justice of this rule. We think the facts of this case make it inapplicable, and that it falls within another exception to the general rule. The finding is that the defendant wrongfully prevented the plaintiff from completing the contract. As we understand the rule laid down in our decisions, the plaintiff thereafter had the right to treat the contract as rescinded and, upon proper allegations, recover on a *quantum meruit* for the work and labor performed, together with the special damage suffered, or it might have brought its action for damages against the defendant for its breach of the contract. We pointed out in *Valente* v. *Weinberg,* 80 Conn. 134, 67 Atl. 369, the distinction between it and *Pinches* v. *Swedish Evangelical Lutheran Church,* and that each had its own measure of recovery. We said

(p. 138): "The present case is within the exception which permits a recovery by the contractor when the other party has incapacitated himself to perform his part of the contract, or prevented the contractor from performing his." In such case, we held, the measure of recovery is not the contract price less the cost of completing the contract, but the reasonable value of the services and materials furnished, or just damages for the breach. Again, in *Hoyt* v. *Pomeroy*, 87 Conn. 41, 46, 86 Atl. 755, we said: "When one party without fault on his part is prevented by the other from completing the contract, he may treat it as rescinded and recover on *quantum meruit* for the part performed, or sue for damages for the breach of the contract." Some authorities hold that the measure of damages is the value of the services plus the damage sustained by the refusal to allow performance. Phillips on Mechanics Liens (2d Ed.) § 139; *Cutter* v. *Powell*, 2 Smith Leading Cases (Hare and Wallace Notes) p. 44. Certainly this rule measures the actual loss. But so do those we adopted in *Valente* v. *Weinberg*, 80 Conn. 134, 67 Atl. 369, and these are those generally adopted by the authorities in an action where performance of a special contract has been prevented by the party from whom the recovery is sought. "In such a case," the Supreme Judicial Court of Massachusetts say, "the innocent party may either sue on the contract for damages for the breach, or, if he so elects, he may regard the action of the defendants as indicating a purpose on their part to repudiate the contract, may accept the repudiation and recover upon a *quantum meruit* the value of his services as if the special contract had not existed." *Posner* v. *Seder*, 184 Mass. 331, 333, 68 N. E. 335; *Bailey* v. *Marden*, 193 Mass. 277, 279, 79 N. E. 257; *Moore* v. *Board of Regents*, 215 Mo. 705, 115 S. W. 6; *Philadelphia* v. *Tripple*, 230 Pa. St. 480, 79 Atl. 703; 40 Cyc. 2830. See

Daly & Sons *v.* New Haven Hotel Co.

cases cited in *Valente* v. *Weinberg*, 80 Conn. 134, 67 Atl. 369.

In the case of substantial performance of a contract, it is just that the contractor should get the benefit of his contract, and it is just that the contractee should not be obliged to simply pay the value of the work done, for he may have made a good contract for himself. Hence the measure of recovery, doing best justice to each party to the contract, is the contract price less the sum it would cost to complete the work as agreed. *Blakeslee* v. *Holt*, 42 Conn. 226, 229. But where the contractor has been prevented from completing his contract, the added element of fault on the part of the contractee is present. Under such circumstances should the contractee, who has prevented the completion of the contract, and who may have made a contract very advantageous to himself, be compelled to pay merely the contract price less the value of the defective or omitted work? Or should the contractor, who is not in fault, be permitted to recover either damages for the breach, which would give him the profits of his contract, if any, or the reasonable value of the work done, if the contract was an unprofitable one for him? The contractee has breached his contract, therefore the law has deemed it just to give the contractor the option of these remedies, and this we conceive to be the reason for the adoption of these measures of recovery by the authorities generally and by us in *Valente* v. *Weinberg*, 80 Conn. 134, 67 Atl. 369.

The majority opinion states that *Valente* v. *Weinberg* is not a case of substantial performance, and that the rule there adopted applies to a case of wrongful prevention when there has been no substantial performance. But the court, in that case, in stating the claim of the plaintiff to which it applies the rule it adopts, says, on page 135: "The plaintiff claims that after he had nearly

Daly & Sons *v.* New Haven Hotel Co.

completed the building the defendant unlawfully ejected him from the premises and prevented his completion of the contract." We conceive no proper legal distinction between the substantial performance of a contract and the "nearly completed performance" of a contract. By adopting such a distinction, we should have a different measure of recovery for each, and this the majority opinion contemplates. We feel that this ruling will add to the difficulties of the trier and to the uncertainty of the law. When could a contract be said to be substantially performed and when nearly completed? If the rule of *Valente* v. *Weinberg* applies only to cases of prevention of fulfillment when the contract has not been substantially performed, it follows that in the case of a partial performance, when the contractee has prevented complete performance, two remedies are given, while in the case of a substantial performance, when the contractee has prevented complete performance, one remedy is given and that is the equivalent of one of the remedies given in the case of a partial performance, viz. damages for breach of contract. Why treat the case of a partial performance better than the case of a substantial performance? We are unable to agree with the majority opinion in so doing.

In this opinion TUTTLE, J., concurred.